FILED

NOV 17 2020

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § SA20CR0540 XR |
| Plaintiff | § CRIMINAL NO. |
| | § |
| v. | § INFORMATION |
| | § |
| VICTOR FARIAS, | § [Violation: Wire Fraud, 18 U.S.C. § 1343] |
| | § |
| Defendant | § |
| | § Notice of Government's Demand For |
| | § Forfeiture |

**THE UNITED STATES ATTORNEY CHARGES:**

GENERAL ALLEGATIONS

At all times relevant to this Information:

Definitions:

1. A "Ponzi scheme" is a type of fraudulent scheme in which a perpetrator obtains money from victims, generally for a purported investment opportunity, but uses some or all of the money for an unrelated purpose, such as to pay the perpetrator's personal expenses. When earlier victims are owed money from their supposed "investments," they are either convinced to "reinvest" their principal and illusory profits with the perpetrator, or they are paid with money from later victims' "investments." Because earlier victims often must be paid with funds defrauded from later victims, a Ponzi scheme generally requires a constant influx of new victims to be successful.

The Scheme:

2. Defendant Victor Farias is the owner of Integrity Aviation & Leasing LLC (IAL), a company that he founded in or around 2013. Between approximately 2013 and 2019, Farias used IAL to perpetuate a Ponzi scheme, whereby he solicited investor money based

on misrepresentations of material facts, resulting in net losses to investors of $7,424,646.42. Both Farias and IAL are located within the Western District of Texas and were during the time period of this scheme.

3. Between approximately 2013 and 2019, Farias and others acting at his direction persuaded victims to invest in IAL by offering them Secured Promissory Notes based on false and misleading promises and representations, including that: (1) money provided by investors would be used to purchase aircraft engines, which would then be leased to airlines for profit; (2) Farias would not pay himself a salary; (3) Farias would not pay commissions to himself or his sales force; and (4) that victims would receive regular interest payments from IAL's purported leasing of aircraft engines to airlines.

4. Farias made and directed others to make these misrepresentations knowing they were false and for the purpose of obtaining money from potential investor victims. Multiple investor victims were interviewed and stated they would not have invested in IAL if they had known the truth about IAL's business practices and what Farias would do with their money.

5. In fact, IAL purchased only a single aircraft engine, which it sold shortly thereafter, generating little or no profit for investors. Moreover, Farias not only paid himself a salary, and paid a commission to himself and his sales force, but also diverted investor money to other purposes, including paying his own personal expenses, paying false investment returns to prior investors, and financing the construction of the Fair Oaks Country Store, a convenience store entirely unrelated to the purported IAL investment.

*Manner and Means:*

6. Farias's scheme was furthered through use of wire and mail communication to and from victim investors, including emails, traditional mailings, and use of wire transfers, in interstate and foreign commerce.

7. On multiple occasions in furtherance of the scheme, Farias transmitted or caused to be transmitted in interstate and foreign commerce signals via wire to investors and potential investors containing material misrepresentations of fact.

8. On multiple occasions in furtherance of the scheme, Farias caused investors to transmit in interstate and foreign commerce signals by wire for the purpose of sending money to IAL's bank accounts.

9. On multiple occasions in furtherance of the scheme, Farias transmitted signals in interstate and foreign commerce by wire for the purpose of routing victim money from IAL's bank accounts.

## COUNT ONE
### Wire Fraud
### [18 U.S.C. §§ 1343 & 2]

10. This Count One incorporates by reference, as if fully set forth herein, the General Allegations on pages 1 through 3 of this Information.

11. On or about the date set forth below, in the Western District of Texas and elsewhere, the Defendant, knowingly and with intent to defraud, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing that scheme and artifice, transmitted and caused to be transmitted by means of

wire, radio and television communication in interstate and foreign commerce the writings, signs, signals, pictures and sounds described below:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | March 15, 2018 | A $340,000 wire transfer from a trust company in Oak Brook Illinois, acting on behalf of VICTIM-1, to IAL's New York bank account based upon Farias's misrepresentations. On the same day, Farias wired $250,000 from IAL's New York bank account to the San Antonio, Texas bank account of the Fair Oaks Country Store. |

All in violation of Sections 2 and 1343 of Title 18 of the United States Code.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* FED. R. CRIM. P. 32.2]

### I.
### Forfeiture Statute for Wire Fraud
[18 U.S.C. § 1343, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c)

As a result of the foregoing criminal violations set forth in Count One, the United States gives notice that it intends for forfeit, but is not limited to, the below-listed properties from Defendant Victor Farias. Defendant shall forfeit all right, title, and interest in said properties to the United States pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 981(a)(1)(C), which is made applicable to criminal forfeiture by 28 U.S.C. § 2461(c), which states

> **18 U.S.C. § 981.  Civil Forfeiture**
> (a)(1)  The following property is subject to forfeiture to the United States:
> (C) Any property, real or personal which constitutes or is derived from proceeds traceable to . . . an offense constituting "specific unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 956(c)(7).

**Money Judgment**

      A sum of money that represents the total amount of property, real or personal, involved in the violations for which the Defendant Victor Farias is liable.

**Substitute Assets**

      If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendant;

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third person;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property owned by Victor Farias up to the value of said money judgment as substitute assets, pursuant to FED. R. CRIM. P. 32.2 and 21 U.S.C. § 853(p).


GREGG SOFER
United States Attorney

By: _____
MATT HARDING
Assistant United States Attorney